AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Joshua Warren HANCOCK<br>James Wendell REED, Jr.<br><br>Defendant(s) | Case No.<br>6:22-mj-1718 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 13, 2022 - July 19, 2022__ in the county of __Volusia__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) | Conspiracy to distribute methamphetamine, heroin, and/or fentanyl |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

Sworn to before me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d)

Date: 07/20/2022

City and state: Orlando, FL

_Complainant's signature_
7/19/2022 4:27pm

Kimako W. Finey, SA, DEA
_Printed name and title_

_Judge's signature_

Honorable Embry J. Kidd, U.S. Magistrate Judge
_Printed name and title_

STATE OF FLORIDA                           CASE NO.: 6:22-mj - 1718

COUNTY OF ORANGE

### MASTER AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Kimako W. Finey, being duly sworn, state the following:

### INTRODUCTION

1. I am a Special Agent with the United States Department of Justice Drug Enforcement Administration (DEA), Orlando District Office. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed by the DEA as a Special Agent since January 2010. I received 21 weeks of training at the DEA Academy at Quantico, Virginia. As a graduate of the DEA Academy, I have received specialized training in the areas of narcotics distribution and money laundering. I have been personally involved in investigations concerning the possession, manufacture, and distribution of narcotics, as well as the methods used to finance narcotics distribution and launder narcotics proceeds. I have received extensive training pertaining to narcotics investigations and the investigation of various crimes which arise from narcotics distribution.

3. I have been trained in the methods that narcotics distributors use to distribute narcotics and I am familiar with the means by which narcotics distributors

manage, transport, and conceal the proceeds of their narcotics distribution activities. I have participated in and conducted investigations of violations of various state and federal criminal laws, including violations of Titles 21 and 18 of the United States Code.

4. During my tenure with the DEA, I have participated in narcotics investigations and I am familiar with, and have participated in, all normal methods of investigation, including (but not limited to) visual surveillance, interviewing of witnesses, acting in an undercover capacity, the execution of arrest and search warrants, the use of confidential informants and sources, the installation and use of global positioning system (GPS) mobile tracking devices, and the use of electronic recording/listening devices. Through my training, education, experience, and conversations with other more experienced Special Agents and law enforcement officers, I am aware that narcotics distributors commonly utilize cellular telephones, often registered in nominee or fictitious names, in furtherance of their narcotics distribution-related activities. I also know that narcotics distributors frequently have access to several cellular telephones, and that they periodically use new cellular telephones, all in an effort to avoid detection and to thwart law enforcement efforts. I have also become familiar with the manner in which illegal narcotics are imported and distributed, the methods of payment used for such narcotics, and the efforts of persons involved in such activity to avoid detection by law enforcement. I have also become familiar with the manner in which narcotics distributors conduct their illegal business and the methods, language, and terms used to disguise conversations about

2

their narcotics activities. I have learned that narcotics distributors rarely refer to heroin, cocaine, cocaine base (also known as "crack"), marijuana, methamphetamine, or other illegal narcotics expressly by name. Instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, narcotics distributors routinely refer to narcotics types and quantities, narcotics prices, and other illegal activities by using innocuous phrases or code words. I have learned that narcotics transactions often occur in rapid succession during short encounters between narcotics distributors and narcotics customers.

## PURPOSE OF AFFIDAVIT

5. This affidavit concerns an investigation by law enforcement into offenses under federal criminal law, specifically conspiracy to possess with intent to distribute and distribution of methamphetamine and heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1) in the Middle District of Florida.

6. Throughout the course of this investigation, I have identified Joshua Warren HANCOCK and James Wendell REED Junior, as subjects participating in the illegal distribution of methamphetamine and heroin in the Middle District of Florida. This affidavit is made in support of a Criminal Complaint against HANCOCK and REED.

7. This affidavit is based upon my personal knowledge, training and experience as a law enforcement officer, information that I received from other law enforcement officers and Special Agents, and information received from other investigative means, including surveillance and the debriefing of a confidential

source (CS). The statements contained in this affidavit are based in part on information I received from Special Agents of the DEA and detectives of the East Volusia Narcotics Task Force (EVNTF). Because this affidavit is being submitted solely for establishing probable cause to arrests of HANCOCK and REED, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to support a criminal complaint.

## FACTUAL BASIS

8. HANCOCK and REED are currently targets in an investigation being conducted by the DEA into the distribution of methamphetamine, heroin, and fentanyl in the Middle District of Florida. This investigation is being conducted in coordination with the EVNTF. As set forth below, HANCOCK is a member of a drug trafficking organization (DTO) that distributes narcotics including, but not limited to, heroin, fentanyl, and methamphetamine. Members of this DTO collaborate to distribute narcotics via telephone conversations, Facebook Messenger, and face-to-face encounters within the Middle District of Florida. The investigation has revealed that HANCOCK is a narcotics source of supply for several individuals in the Oak Hill and Edgewater area of Volusia County, Florida. REED has been identified as HANCOCK's source of supply.

9. In April 2022, the DEA and EVNTF initiated an investigation into HANCOCK based on knowledge of narcotics distribution in the Oak Hill, Florida area, several overdose-related investigations occurring within this community, and CS information. EVNTF detectives and DEA Special Agents quickly became aware

4

that an organized structure existed within the Oak Hill, Florida community, and appeared to be headed by HANCOCK.

10. On or around April 13, 2022, while acting in an undercover (UC) capacity, DEA Special Agent Hunter Welch negotiated a controlled purchase of narcotics from HANCOCK with the assistance of a and a jointly managed DEA/EVNTF CS.[1] The CS negotiated for the purchase of narcotics with HANCOCK by contacting HANCOCK at telephone number xxx-xxx-2604 (HANCOCK'S SECOND PHONE). The UC drove the CS to HANCOCK's residence, located in Oak Hill, Florida. During the course of the purchase, the CS entered HANCOCK's residence while the UC stayed inside in the vehicle. HANCOCK subsequently distributed suspected methamphetamine and suspected heroin to the CS. The CS had initially negotiated for the purchase of approximately two ounces of heroin and two ounces of methamphetamine for $1,500, but HANCOCK was only able to distribute approximately one ounce of heroin and ounce of methamphetamine for $1,100. During the course of the narcotics transaction, the UC approached the door of HANCOCK's residence and was able to positively identify HANCOCK from a previously reviewed photograph of HANCOCK from the Florida Department of Highway Safety and Motor Vehicles (DMV). The UC had a clear, unobstructed view of HANCOCK and he nodded to

---

[1] The CS referenced in this affidavit is motivated by altruism, due to the loss of several family members in the Oak Hill, Florida area. The DEA and the EVNTF have additionally been financially compensating the CS for his/her involvement in this investigation, based on his/her unique relationship with HANCOCK, who the CS has known for several years. The CS has a criminal history to include possession of a controlled substance, battery and domestic battery.

the UC and acknowledged the UC's presence outside his residence. After exiting HANCOCK's residence, the CS transferred approximately 26.9 grams of suspected heroin, and 20.2 grams of suspected methamphetamine to the UC. The CS was then searched for the presence of contraband and weapons and nothing additional was located. Presumptive tests of the substances seized by law enforcement revealed positive results for the presence of methamphetamine and heroin, respectively.

11. On or around May 5, 2022, the UC negotiated a controlled purchase of narcotics from HANCOCK while acting in an UC capacity. Prior to a controlled purchase of narcotics, HANCOCK contacted the UC from telephone number xxx-xxx-2604. HANCOCK and the UC discussed the purchase of narcotics and negotiated the type of narcotics, the weight of narcotics, and how much money was needed to purchase the narcotics. HANCOCK subsequently called the UC from a different telephone number xxx-xxx-8338 (HANCOCK's PRIMARY PHONE) and implied he preferred to communicate through this phone number. The UC met HANCOCK in the vicinity of 2514 West International Speedway Boulevard, Daytona Beach, Florida, 32114. An audio recording device captured the UC's conversation with HANCOCK in which they discussed the future purchase of one pound of methamphetamine. HANCOCK entered the UC's unmarked undercover vehicle to conduct the narcotics transaction and pictures were taken of HANCOCK inside of this vehicle, during the meeting with the UC. HANCOCK subsequently distributed approximately 84.6 grams of suspected methamphetamine to the UC in exchange for $800. A presumptive test of the substance seized by agents revealed a

presumptive positive result for the presence of methamphetamine.

12. On or around May 6, 2022, an administrative subpoena was issued to T-Mobile for information on HANCOCK's PRIMARY PHONE. The administrative subpoena identified the name and address on the account as Mike Jones, at 123 Walker Avenue, New Smyrna Beach, Florida, 32168. Based on my training, knowledge, and experience, I know that narcotics distributors often use fictious names and addresses on cellular phone accounts to conceal their true identifies.

13. On or around June 24, 2022, the UC negotiated a controlled purchase of narcotics with HANCOCK while acting in a UC capacity. Prior to meeting with HANCOCK, the UC contacted HANCOCK on HANCOCK'S PRIMARY PHONE through both text messages and phone calls and negotiated the type of narcotics, the weight of narcotics, and how much money was needed to purchase the narcotics. Prior to HANCOCK meeting with the UC, detectives of the EVNTF observed HANCOCK arriving at an address associated with REED. This was based on DMV-listed information that 612 Williamsburg Drive, Daytona Beach, Florida, 32117 is listed as REED's address. EVNTF detectives positively identified REED and observed him walk up to the driver's side of HANCOCK's car and transfer a bag to HANCOCK. HANCOCK then drove to meet the UC for the narcotics transaction. The UC met HANCOCK in vicinity of 1290 North Nova Road, Daytona Beach, Florida, 32117. Audio and video recording devices captured the UC's conversation with HANCOCK. HANCOCK entered the UC's vehicle to conduct the narcotics

transaction. HANCOCK subsequently distributed approximately 160 grams of suspected methamphetamine and approximately 56 grams of suspected heroin to the UC from a bag of similar size, shape, and color to the one handed to HANCOCK by REED, in exchange for $3,300. A presumptive test of the substances seized by agents revealed positive results for methamphetamine and heroin, respectively. After completing the narcotics transaction, EVNTF detectives observed HANCOCK arrive back at REED's house and go inside REED's residence.

14. On or around June 24, 2022, the UC initiated contact with HANCOCK's PRIMARY PHONE through texts messages to tell HANCOCK he distributed six ounces, rather than the agreed upon eight ounces, of methamphetamine. HANCOCK told the UC, that he "called his boy" and that his "boy" made a mistake in the weight of the methamphetamine prior to distribution. HANCOCK agreed to provide the additional methamphetamine at a later date.

15. On or around July 6, 2022, the UC negotiated a controlled purchase of narcotics with HANCOCK while acting in a UC capacity. Prior to meeting with HANCOCK, the UC contacted him at HANCOCK'S PRIMARY PHONE through both text messages and phone calls and negotiated the type of narcotics, the weight of narcotics, and how much money was needed to purchase the narcotics. Prior to HANCOCK meeting with the UC, detectives of the EVNTF observed HANCOCK arriving at REED's residence. EVNTF detectives positively identified HANCOCK and observed him walk up to REED's residence and go inside. HANCOCK then drove to meet the UC for the narcotics transaction. The UC met HANCOCK in

8

vicinity of 1290 North Nova Road, Daytona Beach, Florida, 32117. Audio and video recording devices captured the UC's conversation with HANCOCK. HANCOCK entered the UC's unmarked undercover vehicle to conduct the narcotics transaction. HANCOCK subsequently distributed approximately 84.5 grams of suspected heroin to the UC in exchange for $4,800. In addition, HANCOCK provided the UC with approximately 55.5 grams of suspected methamphetamine, which was owed to the UC from the previous deal (June 24, 2022) in which HANCOCK had shorted the UC. This was provided at no additional cost. A presumptive test for the substances seized by agents revealed a positive result for methamphetamine and heroin, respectively. After completing the narcotics transaction, EVNTF detectives observed HANCOCK arrive back at REED's residence and go inside.

16. After the July 6, 2022 transaction was completed, the UC realized that HANCOCK shorted the UC on the suspected heroin. On or around July 7, 2022, the UC initiated contact with HANCOCK's PRIMARY PHONE through texts messages to tell HANCOCK he distributed three ounces, rather than the agreed upon four ounces of heroin. HANCOCK did not reply to the UC until around July 11, 2022 when he told the UC, that his "boy" made a mistake in the weight of the heroin prior to distribution and now, I'm the bad guy!" HANCOCK apologized to the UC and agreed to provide the additional heroin at a later date.

17. On or around July 15, 2022, the UC negotiated a controlled purchase of narcotics with HANCOCK while acting in a UC capacity. Prior to meeting with HANCOCK, the UC contacted him at HANCOCK'S PRIMARY PHONE through

9

both text messages and phone calls and negotiated the type of narcotics, the weight of narcotics, and how much money was needed to purchase the narcotics. Prior to HANCOCK meeting with the UC, detectives of the EVNTF observed HANCOCK arriving at REED's residence. EVNTF detectives positively identified HANCOCK and observed him walk up to REED's residence and go inside. HANCOCK then drove to meet the UC for the narcotics transaction. The UC met HANCOCK in vicinity of 1290 North Nova Road, Daytona Beach, Florida, 32117. Audio and video recording devices captured the UC's conversation with HANCOCK. HANCOCK entered the UC's unmarked undercover vehicle to conduct the narcotics transaction. HANCOCK subsequently distributed approximately 56.02 grams of suspected heroin or fentanyl in exchange for $2,000. In addition, HANCOCK provided the UC with an additional approximately 28 grams of suspected heroin or fentanyl, which was owed to the UC from the previous deal (July 6, 2022) in which HANCOCK had shorted the UC. This was provided at no additional cost. A presumptive test for the substance seized by agents revealed a positive result for fentanyl. After completing the narcotics transaction, EVNTF detectives observed HANCOCK arrive back at REED's residence and go inside.

## SEARCH WARRANT EXECUTION

18. On July 18, 2022, DEA Special Agent Hunter Welch applied for a search warrant to search REED's residence in Daytona Beach. The warrant was authorized by U.S. Magistrate Judge Embry J. Kidd (Case No. 6:22-mj-1709).

19. On July 19, 2022, DEA agents executed the warrant on REED's

residence as authorized by the warrant. Inside they found approximately 680 grams of suspected methamphetamine, 162 grams of suspected heroin, 131 grams of suspected fentanyl and $30,200 U.S. currency. EVNTF detectives conducted field tests on the controlled substances and received a positive result for the presence of methamphetamine, heroin, and fentanyl, respectively. REED was located inside the residence. See photograph below.



20.    I conducted a custodial interview with HANCOCK and Post-*Miranda* HANCOCK admitted to distributing controlled substances to the UC and that he had obtained the controlled substances from REED. He also advised that REED keeps his narcotics in and around a refrigerator, which is where agents located the controlled substances in REED's residence.

21.    DEA Agent Welch conducted a custodial interview with REED and Post-*Miranda* REED denied knowing HANCOCK and later invoked.

## CONCLUSION

22. Based on the above facts and information, I submit that probable cause exists to support the issuance of an arrest warrant for HANCOCK and REED for committing violations of 21 U.S.C. §§ 846 and 841(a)(1), that is, conspiracy to distribute methamphetamine, heroin and/or fentanyl.

This concludes my affidavit.

7/19/2022 4:27 p.m.

Kimako W. Finey, Special Agent
Drug Enforcement Administration

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone or other reliable electronic means consistent with Fed. R. Crim. P. 4.1 and 41(d) before me this 20 day of July 2022.

HONORABLE EMBRY J KIDD
United States Magistrate Judge